1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT V.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

Case No. 2:19-cv-00742

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of Defendant's denial of his

application for supplemental security income ("SSI") benefits.

The parties have consented to have this matter heard by the undersigned

Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

MJR 13. For the reasons set forth below, the undersigned agrees that the ALJ erred,

and the ALJ's decision is reversed and remanded for an award of benefits.

## I.    <u>ISSUES FOR REVIEW</u>

1. Did the ALJ properly evaluate Plaintiff's impairments at step two of
   the sequential evaluation?
2. Did the ALJ err in assessing the medical opinion evidence?

## II.    <u>BACKGROUND</u>

On July 21, 2015, Plaintiff filed an application for SSI, alleging a disability onset

date of December 15, 2010. AR 45, 198-207, 208-13. Plaintiff's application was denied

upon initial administrative review and on reconsideration. AR 45, 124-32, 134-40. A

hearing was held before Administrative Law Judge ("ALJ") Stephanie Martz on September 19, 2017. AR 67-94. On April 20, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled. AR 42-61. The Social Security Appeals Council denied Plaintiff's request for review on March 12, 2019. AR 1-6.

Plaintiff seeks judicial review of the ALJ's April 20, 2018 decision. Dkt. 4.

### III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### IV.   DISCUSSION

In this case, the ALJ found that Plaintiff had the severe, medically determinable impairments of mood disorder with psychotic features and post-traumatic stress disorder ("PTSD"). AR 47.

The ALJ found that Plaintiff did not have a medically determinable intellectual or neurocognitive disorder. AR 48. The ALJ also found that Plaintiff had a range of medically determinable, but non-severe impairments, including diabetes, obesity, headaches, seizures, and left arm pain. AR 48-50.

Based on the limitations stemming from these impairments, the ALJ found that Plaintiff could perform a full range of work at all exertional levels with a range of work-related mental limitations. AR 51. Relying on vocational expert ("VE") testimony, the ALJ

1   found that Plaintiff could perform his past relevant work; therefore the ALJ determined at

2   step four that Plaintiff was not disabled. AR 60-61, 88-89.

3       A.  Whether the ALJ erred at step two

4       Plaintiff contends that the ALJ erred at step two of the sequential evaluation by

5   finding that his neurocognitive/intellectual disorder, traumatic brain injury, and diabetes

6   were not severe, medically determinable impairments. Dkt. 10, pp. 2-6.

7       At step two of the sequential evaluation process, the ALJ determines whether the

8   claimant "has a medically severe impairment or combination of impairments." *Smolen v.*

9   *Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §

10  416.920(a)(4)(ii).

11      Step two is a threshold determination meant to screen out weak claims. *Buck v.*

12  *Berryhill*, 869 F.3d 1040, 1048-1049 (9th Cir. 2017). An impairment or combination of

13  impairments can be found 'not severe' only if the evidence establishes a slight

14  abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'"

15  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28).

16      Under regulations in force when Plaintiff filed his application, an impairment was

17  medically determinable only when its existence could be shown through objective

18  medical evidence such as laboratory findings and tests done using acceptable clinical

19  diagnostic techniques. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citing

20  Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *1 (July 2, 1996)).

21      "[R]egardless of how many symptoms an individual alleges, or how genuine the

22  individual's complaints may appear to be, the existence of a medically determinable

23  physical or mental impairment cannot be established in the absence of objective

24

25

1  medical abnormalities; i.e., medical signs and laboratory findings.' " *Ukolov*, 420 F.3d at

2  1005 (quoting SSR 96-4p, 1996 WL 374187, at *1-2).

3      1.  Traumatic Brain Injury and Neurocognitive Impairment

4      The ALJ's finding that Plaintiff's traumatic brain injury and the cognitive disorder

5  stemming from this injury were non-severe, non-medically determinable impairments is

6  not supported by substantial evidence.

7      Plaintiff's traumatic brain injury, neurocognitive impairment and their

8  accompanying symptoms stem from a March 2004 injury; Plaintiff was robbed and hit

9  on the head with a crowbar, suffering a fractured skull. AR 346, 358-59, 617. Plaintiff

10  worked intermittently after his injury, but testified he had progressively worsening

11  difficulties with memory, concentration, cognition, anxiety, and post-traumatic stress. AR

12  71, 75-76, 224, 242, 246-48, 277, 278-80, 470, 617.

13      The ALJ acknowledged that two examining psychologists, James Czysz, Psy.D.

14  and Melanie Mitchell, Psy.D., both diagnosed Plaintiff with a neurocognitive impairment.

15  AR 48, 360, 365, 616-17. But, the ALJ assigned greater weight to a neuropsychological

16  evaluation conducted by Myron Goldberg, Ph.D. AR 48, 634-38.

17      Dr. Goldberg conducted a series of psychological tests; Plaintiff had a full scale

18  IQ score of 65, along with significant deficits in mental processing speed and memory

19  function. AR 637. Dr. Goldberg also observed Plaintiff's cognitive test results were of

20  questionable validity since a performance validity metric indicated that Plaintiff's level of

21  engagement with the testing was well below the normal range. *Id.* Plaintiff's emotional

22  and psychiatric symptoms, namely anxiety, depression, hallucinations and paranoia,

23  could have affected his performance during the cognitive testing, "perhaps accounting

24

25

1   for a good portion of the apparent difficulties he had in fully engaging his cognitive

2   resources." AR 638. According to Dr. Goldberg, if Plaintiff's psychiatric symptoms

3   improved with treatment, an additional neuropsychological evaluation could help

4   determine the nature of his cognitive problems and provide guidelines for treatment. *Id.*

5         The ALJ reasoned that Dr. Goldberg's opinion (based on extensive testing and

6   six hours of observation) was more persuasive than the opinions of Dr. Czysz and Dr.

7   Mitchell, because both Czysz and Mitchell conducted only brief examinations. AR 48.

8         The ALJ's findings are unsupported, and the error is not harmless. First, the ALJ

9   did not address Plaintiff's traumatic brain injury as a distinct impairment at step two of

10  the sequential evaluation, even though Plaintiff's treating physician observed that a

11  2015 MRI of Plaintiff's brain revealed encephalomalacia consistent with a traumatic

12  brain injury, and other examining sources diagnosed Plaintiff with a traumatic brain

13  injury and observed symptoms consistent with this condition, including left sided

14  weakness, balance problems, and memory loss. AR 466, 472, 597-99, 721, 726, 809-

15  11, 834.

16        Second, the ALJ erred in citing the results of Dr. Goldberg's examination as

17  evidence that Plaintiff's neurocognitive disorder was not medically determinable – the

18  record shows Dr. Goldberg simply indicated than additional testing was necessary to

19  determine the nature and extent of Plaintiff's cognitive limitations. Therefore, his opinion

20  is not inconsistent with the opinions of Dr. Czysz and Dr. Mitchell that Plaintiff has a

21  medically determinable neurocognitive impairment. AR 360, 365, 616-17, 638.

22        Further, the record contains additional psychological testing consistent with a

23  finding that Plaintiff had a severe, medically determinable cognitive impairment. Testing

24

25

1  conducted by Dr. Mitchell revealed that Plaintiff had a full scale IQ of 59, indicating that

2  Plaintiff would likely experience substantial difficulty interacting with peers and

3  performing a wide variety of tasks. AR 617-18. A Montreal Cognitive Assessment

4  ("MoCA") administered by Plaintiff's treating physician, Dana Fong, M.D., revealed a

5  "surprisingly low" score of 12 out of 26, significantly below a score of 26 out of 30, which

6  is considered normal. AR 454-55; *see e.g. Johnson-Tingley v. Berryhill*, No. 1:16-CV-

7  03201-RHW, 2017 WL 7052256, n.1 (E.D. Wash. Nov. 17, 2017) (explaining the

8  MoCA).

9      Importantly, both non-examining state agency psychologists, Michael Regets,

10  Ph.D. and Thomas Clifford, Ph.D. found that Plaintiff had a severe, medically

11  determinable organic mental disorder, which they analyzed under Listing 12.02, the

12  listing for neurocognitive disorders. AR 101-02, 115-16; *see* 20 C.F.R. pt. 404, subpt. P,

13  app. 1, § 12.02.

14      Plaintiff's traumatic brain injury and neurocognitive disorder have been

15  established by medical signs and laboratory findings, and the record shows that

16  Plaintiff's symptoms stemming from these impairments impose more than a minimal

17  effect on Plaintiff's ability to work. Accordingly, the ALJ erred in finding that these

18  impairments were non-medically determinable, non-severe impairments at step two.

19      The ALJ's failure to find these impairments medically determinable and severe at

20  step two was not harmless. If the ALJ had found Plaintiff's brain injury and

21  neurocognitive disorder severe at step two, the ALJ would then have assessed at step

22  three whether Plaintiff's condition met or medically equaled any of the impairments

23  listed in 20 C.F.R. Part 404, Subpart P, Appendix. 20 C.F.R. § 416.920(d); SSR 16-3p

24

25

1   (noting that if the individual has a severe medically determinable impairment at step two

2   of the sequential evaluation, the ALJ must then consider whether that impairment meets

3   or equals a listing at step three).

4          As the state agency consultants acknowledged, the listing applicable to Plaintiff's

5   neurocognitive impairment is Listing 12.02, which requires: (A) medical documentation

6   of a significant cognitive decline from a prior level of functioning in one or more of the

7   cognitive areas: complex attention, executive function, learning and memory, language,

8   perceptual-motor, or social cognition; and (B) extreme limitation of one, or marked

9   limitation of two paragraph B criteria domains; or (C) evidence of a "serious and

10  persistent" mental disorder, with medical documentation of the existence of the disorder

11  over a period of at least 2 years, and evidence of both: medical treatment, mental health

12  therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and

13  that diminishes the symptoms and signs of your mental disorder; and marginal

14  adjustment, that is, minimal capacity to adapt to changes in one's environment or to

15  demands that are not already part of one's daily life. AR 101-02, 115-16; *see* 20 C.F.R.

16  pt. 404, subpt. P, app. 1, § 12.02.

17         As discussed above, the record shows that Plaintiff's brain injury and

18  neurocognitive impairment have persisted, worsened over time, and the impairments

19  have led to functional limitations potentially consistent with the criteria contained in

20  Listing 12.02. If the Court were to remand for further proceedings, the ALJ would need

21  to consider, with the assistance of a medical expert if necessary, whether Plaintiff's

22  impairments meet or equal listing 12.02 or any other listings. But, as explained below,

23  the Court finds that the statements, assessments, and opinions of the rejected medical

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 7

experts should be credited as true, further proceedings would not be useful, and there is

no ambiguity in the record concerning the Plaintiff's disabling limitations that flow from

his cognitive and psychological impairments. Therefore, a remand for award of benefits

is appropriate and no further proceedings are required.

2. <u>Diabetes</u>

The ALJ found Plaintiff's diabetes non-severe. The ALJ's reasons were: Plaintiff

had a single incident of diabetic ketoacidosis that was receptive to treatment, and had

intermittent issues with hypoglycemia and diabetic foot ulcers, and Plaintiff did not

display symptoms of diabetic retinopathy, neuropathy, or nephropathy, and his diabetes

was under good control with treatment. AR 48-49.

In assessing the RFC, an ALJ must consider limitations and restrictions imposed

by all an individual's impairments, even those that are not 'severe', and an RFC should

be precisely the same regardless of whether certain impairments are found severe at

step two of the sequential evaluation. *Buck v. Berryhill,* 869 F.3d 1040, 1049 (9th Cir.

2017) (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims,

SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). In *Buck,* the Ninth Circuit

concluded that because the ALJ decided step two in the claimant's favor and was

required to consider all impairments in the RFC, whether "severe" or not, "[a]ny alleged

error is therefore harmless and cannot be the basis for a remand." *Id.* (citing *Molina v.

Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

Here, the RFC does not contain any physical limitations related to Plaintiff's

diabetes. AR 51. Because the Court is ordering a remand for award of benefits on the

basis of the ALJ's error concerning Plaintiff's mental and cognitive impairments, any

error concerning whether Plaintiff's diabetes presents limitations that would be relevant to the assessment of whether Plaintiff is disabled is harmless in this case.

B. <u>Whether the ALJ erred in evaluating the medical opinion evidence</u>

Plaintiff contends that the ALJ erred in evaluating opinion evidence from his treating physician Dr. Fong and examining psychologists Dr. Czysz and Dr. Mitchell. Dkt. 10, pp. 6-18.

As discussed above, the opinions of Dr. Czysz and Dr. Mitchell, which both assessed Plaintiff as having a range of marked and severe mental limitations, are predicated, to a significant extent, on their finding that Plaintiff had a medically determinable neurocognitive impairment. AR 359-63, 364-70, 616-24. Similarly, Dr. Fong, who found that Plaintiff would be restricted to sedentary work, noted that Plaintiff's score on the Montreal Cognitive Assessment was "surprisingly low", stated that Plaintiff's cognitive limitations were primarily what prevented him from working and opined that additional testing was necessary to assess the full extent of Plaintiff's cognitive limitations. AR 454-55, 597-99, 834.

The ALJ assigned "little weight" to the opinions of Dr. Fong, Dr. Mitchell, and Dr. Czysz, reasoning, in part, that all their opinions were predicated on diagnoses of a traumatic brain injury and/or a neurocognitive impairment, which the ALJ found non-medically determinable at step two. AR 56, 59. For the reasons discussed above, the ALJ's finding that these impairments were non-medically determinable and non-severe is not supported by substantial evidence. *See supra* Section IV.A.

In discounting the opinions of Dr. Mitchell and Dr. Czysz, the ALJ further reasoned that: (1) Plaintiff's psychiatric treatment has largely focused on dealing with

1    his housing situation rather than his mental impairments; (2) Dr. Mitchell and Dr. Czysz

2    did not review the longitudinal record, which reveals generally normal mental status

3    examinations; (3) Plaintiff's symptoms improved with treatment; (4) the opinions of Dr.

4    Mitchell and Dr. Czysz concerning Plaintiff's functional limitations were inconsistent with

5    Plaintiff's self-reported activities of daily living; (5) Plaintiff has never exhibited psychotic

6    symptoms during appointments; (6) their opinions rely on Plaintiff's unreliable self-

7    reports; and (7) their opinions concerning Plaintiff's marked and severe mental

8    limitations are internally inconsistent, given that they both opined that vocational training

9    or services would minimize or eliminate barriers to employment and Plaintiff would not

10   require a representative payee. AR 58-60.

11         With respect to the ALJ's first reason, it is the impairment that must prevent

12   performance of substantial gainful activity, not situational factors, such as job losses,

13   economic issues, or homelessness; and any impairment that does not last continuously

14   for twelve months does not satisfy the requirement. *See* 42 U.S.C. §§ 423(d)(1)(A):

15         '[D]isability' means inability to engage in substantial gainful activity *by*
           *reason of* any medically determinable physical or mental impairment
16         which can be expected to result in death or which has lasted or can be
           expected to last for a *continuous* period of not less than 12 months; or .
17         .  .  .

18   42 U.S.C. §§ 423(d)(1)(A) (emphases added).

19         While Plaintiff may have struggled with housing issues and other situational

20   stressors, as discussed above, the record shows Plaintiff's mental health symptoms are

21   primarily the result of his traumatic brain injury and the resulting neurocognitive

22   impairment. *See Supra* Section IV.A.1. Considering the record as a whole, the ALJ did

23   not have substantial evidence to support a finding that situational stressors were the

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 10

1    cause of, or exacerbations of Plaintiff's limitations; rather, the record shows the

2    Plaintiff's cognitive and mental work-related limitations would cause Plaintiff to lack

3    ability to manage the situational stressors. AR 101-02, 115-16; 359-63, 364-70, 454-55,

4    597-99, 619, 634-38, 834.

5            As for the ALJ's second reason, an inconsistency with the medical record can

6    serve as a specific and legitimate reason for discounting limitations assessed by a

7    physician. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical

8    opinion is with the record as a whole, the more weight [the Social Security

9    Administration] will give to that medical opinion."); *Ghanim v. Colvin*, 763 F.3d 1154,

10   1161 (9th Cir. 2014) (An ALJ may give less weight to medical opinions that conflict with

11   treatment notes).

12           Yet, in discounting the opinions of Mitchell and Dr. Czysz, the ALJ did not point to

13   any specific evidence inconsistent with their findings. AR 59-60. The Social Security

14   Administration must set forth the reasoning behind its decisions in a way that allows for

15   meaningful review, and the ALJ must build an accurate and logical bridge from the

16   evidence to his or her conclusions. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th

17   Cir. 2015); *see also Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (An ALJ errs

18   when he or she "merely states" that facts "point toward an adverse conclusion" yet

19   "makes no effort to relate any of these" facts to "the specific medical opinions and

20   findings he rejects.").

21           Further, the longitudinal record is broadly supportive of Plaintiff's allegations, and

22   indicates that he frequently exhibited symptoms of anxiety, depression, paranoia, and

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 11

1    impaired memory, intellectual functioning, thought processes, insight, judgment, and

2    reasoning. AR 447, 454, 458, 460, 463, 469-86, 487-501, 652, 665-69, 694.

3           With respect to the ALJ's third reason, the ALJ did not identify any specific

4    evidence to indicate that Plaintiff's symptoms improved with treatment. The ALJ's

5    citation of several isolated instances of Plaintiff reporting a temporary abatement in his

6    mental health symptoms in the context of evaluating Plaintiff's symptom testimony does

7    not constitute a specific and legitimate reason for discounting the opinions of Dr.

8    Mitchell and Dr. Czysz. AR 52; *see Garrison v. Colvin*, 759 F.3d 995, 1017-18 (2014)

9    (finding that the ALJ erred by improperly singling out a few periods of temporary well-

10   being from a sustained period of impairment and relied on those instances to discredit a

11   claimant); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.2007) (The

12   Court must consider the entire record as a whole, weighing both the evidence that

13   supports and detracts from the Commissioner's finding, and may not affirm simply by

14   isolating a specific quantum of supporting evidence.")

15          As for the ALJ's fourth reason, a claimant's participation in everyday activities

16   indicating capacities that are transferable to a work setting may constitute a specific and

17   legitimate reason for discounting a medical opinion. *See Morgan v. Comm'r Soc. Sec.*

18   *Admin.*, 169 F.3d 595, 600 (9th Cir.1999).

19          Yet, disability claimants should not be penalized for attempting to lead normal

20   lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

21   1998), citing *Cooper v. Bowe*n, 815 F.2d 557, 561 (9th Cir.1987) (noting that a disability

22   claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits).

23   Here, the ALJ reasoned that Plaintiff's ability to his see his mother on a daily basis, join

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 12

a gym, interact with others at the homeless shelter, and ride a bus are inconsistent with marked and severe limitations in social functioning. AR 59.

Plaintiff's ability to engage in these basic activities of daily living cannot serve as a specific and legitimate reason for discounting the opinions of Dr. Mitchell and Dr. Czysz. *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities.").

With respect to the ALJ's fifth reason, for the reasons discussed above, the ALJ has not accurately characterized the record concerning Plaintiff's presentation at mental health appointments. As Dr. Goldberg found, Plaintiff's symptoms included "ongoing, periodic auditory hallucinations and paranoid thought process". AR 638. Plaintiff reported to Dr. Mitchell that he heard his grandmother (deceased) talking to him and that he finds it scary. AR 618. And, Dr. Czysz noted "auditory hallucination would impair his ability to interact in even a minimally appropriate manner", and "florid psychosis". AR 360, 370. These findings show that Plaintiff's psychotic symptoms were reported and were part of the assessment at his mental health appointments with each of these doctors.

Regarding the ALJ's sixth reason, Dr. Mitchell and Dr. Czysz utilized objective measures such as clinical interviews and mental status examinations in forming their opinion, and there is no evidence that they relied largely on Plaintiff's self-reports. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (a psychiatrist's clinical interview and MSE are "objective measures" which "cannot be discounted as a self-report.").

1    With respect to the ALJ's seventh reason, the ALJ has not accurately

2    characterized the opinions of Dr. Mitchell and Dr. Czysz, both of whom opined that

3    Plaintiff would be unable to sustain employment regardless of vocational assistance. Dr.

4    Mitchell stated that a referral for SSI was appropriate in his case given Plaintiff's

5    chronic, severe mental impairments, his poor prognosis for gainful employment, and his

6    likely need for long-term mental health and housing resources. AR 619. Dr. Czysz

7    similarly stated that Plaintiff would "likely never" be employable in a competitive

8    environment and would require ongoing psychotherapy and housing assistance. AR

9    367.

10    Accordingly, the ALJ has not provided specific and legitimate reasons for

11    discounting the opinions of Dr. Mitchell and Dr. Czysz.

12    C.  Remand for an Award of Benefits

13    Plaintiff asks this Court to remand this case for an award of benefits. Dkt. 10, p.

14    18. "'The decision whether to remand a case for additional evidence, or simply to award

15    benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682

16    (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an

17    ALJ makes an error and the record is uncertain and ambiguous, the court should

18    remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

19    (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

20    the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d

21    at 668.

22    The Ninth Circuit has developed a three-step analysis for determining when to

23    remand for a direct award of benefits. Such remand is generally proper only where

24

25

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

Here, the ALJ erred in assessing Plaintiff's impairments at step two of the sequential evaluation, and consequently did not consider whether Plaintiff's neurocognitive impairment met or equaled a listed impairment at step three. As discussed above, Plaintiff's neurocognitive impairment may meet listing 12.02, and may equal other listings. The ALJ similarly erred in evaluating opinions from examining psychologists Dr. Mitchell and Dr. Czysz, both of whom assessed limitations clearly consistent with a finding of disability.

The ALJ has failed to provide legally sufficient reasons for her step two findings or for rejecting the medical opinion evidence. In this case, there is no serious doubt that if the opinions of Dr. Mitchell and Dr. Czysz were credited as true, and considering the record as a whole, that the ALJ would be required to find Plaintiff disabled on remand. *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (courts have the flexibility to remand for further proceedings when the record as a whole creates "serious doubt" as to whether the claimant is disabled within the meaning of the Social Security Act.).

Accordingly, remand for an award of benefits is the appropriate remedy.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when she found

Plaintiff was not disabled. Defendant's decision to deny benefits is therefore

REVERSED and this matter is REMANDED for an award of benefits.

Dated this 1st day of September, 2020.


*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 16